IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Frederick Irvin, #16620-039, | ) | CIVIL ACTION NO. 9:10-1336-RMG-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| John Owens, Warden FCI Williamsburg; | ) | |
| NFN Holmes, Correctional Recreation | ) | |
| Officer; United States of America; and | ) | |
| NFN Brown, Correctional Recreation Officer | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This action has been filed by the Plaintiff, pro se, pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).[1] Plaintiff, an inmate with the Federal Bureau of Prisons (BOP), alleges violations of his constitutional rights by the named Defendants. Plaintiff also asserts a separate claim under the Federal Tort Claims Act (FTCA).

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on September 13, 2011. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on September 14, 2011, advising Plaintiff of the importance of a motion for

---

[1] In Bivens, the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A Bivens claim is analogous to a claim under 42 U.S.C. § 1983. However, federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of *state* law. See Harlow v. Fitzgerald, 457 U.S. 800, 814-820 (1982). Nevertheless, Harlow and progeny indicate that case law involving § 1983 claims is applicable in Bivens actions and *vice versa*. Farmer v. Brennan, 511 U.S. 825 (1994). See also Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Turner v. Dammon, 848 F.2d 440, 443-444 (4th Cir. 1988); Osabutey v. Welch, 857 F.2d 220, 221-223 (4th Cir. 1988); and Tarantino v. Baker, 825 F.2d 772, 773-775 (4th Cir. 1987), cert. denied, North Carolina v. Tarantino, 489 U.S. 1010 (1989).



summary judgment and of the need for him to file an adequate response.  Plaintiff was specifically

advised that if he failed to file an adequate response, the Defendants' motion may be granted, thereby

ending his case.  Plaintiff thereafter filed a memorandum in opposition to the Defendants' motion

on October 5, 2011.

Defendants' motion is now before the Court for disposition.[2]

### Background and Evidence

Plaintiff alleges in his unverified federal complaint[3] that on May 30, 2009, while

officiating a prison summer league basketball game, he was attacked and assaulted by another

inmate, Bobby Addison.  Plaintiff alleges that Addison was known to be violent due to past conduct,

a fact known to prison staff, but that when the assault occurred there were no prison staff present to

monitor the game, nor was there any staff present to ensure the safety of the inmate officials, who

had previously been threatened with physical harm on numerous occasions by Addison.

Plaintiff alleges that while the game was in process he tried to stop the game because

of Addison's threatening behavior, at which time he was attacked and assaulted by Addison, leaving

"the Plaintiff to fight for his life as his skull hit the cement from his fall from the attack." Plaintiff

further alleges that while this assault/attack was occurring, the Defendants Holmes and Brown (both

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C.  The Defendants have filed a motion for summary judgment.  As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).  However, Plaintiff has filed an *unverified* Complaint.  Therefore, the undersigned has not considered the factual allegations set forth in the unverified Complaint as evidence in issuing a recommendation in this case.

2



correctional officers) were in the recreation yard but did nothing to protect him. Plaintiff alleges that

another inmate, Donald Vanderhorst, ran to find staff, and that when staff arrived he [Plaintiff] "was

lying in a large puddle of blood, having problems breathing and was unconscious." Plaintiff alleges

he was transported to the Williamsburg Regional Medical Center, where it was determined that he

had life threatening injuries, following which he was transferred to the Medical University of South

Carolina for bleeding of the brain. Plaintiff alleges that he also sustained nasal, jaw and mastoid

fractures, a subarachnoid hemorrhage along the bilateral frontopariental, a subdural hematoma

extending from the frontal lobe arterially to the occipital, fluids scattered through the left mastoid

cells, right brain contusion, six staples to the back of the head, sutured laceration to the lip, loss of

taste and smell senses, and problems with memory.

Plaintiff alleges that Holmes and Brown violated his constitutional rights by failing

to protect him from the attack/assault by Addison (First Cause of Action). Plaintiff also asserts

federal tort claims for intentional infliction of emotional distress (Second Cause of Action) and

negligence (Fourth Cause of Action).[4] Plaintiff seeks monetary damages. See, Complaint.

Plaintiff has attached an affidavit to his Complaint in which he reiterates the

allegations of his Complaint, a copy of his Federal Tort Claim form, a copy of the prison Intramural

Code of Conduct, and what appears to be a copy of a page from a disciplinary hearing report on

which Plaintiff has circled a statement relating to his injuries. Plaintiff has also attached several

affidavits from fellow inmates. Inmate Carl McNeil attests to inmate Bobby Addison's violent

behavior, including an incident of violence that occurred during an inmate football game on October

---

[4]While styled as causes of action, Plaintiff's Third, Fifth and Sixth causes of action are actually where Plaintiff seeks relief of punitive and compensatory damages due to the pain and suffering he endured because of the attack, not separate factual claims.



12, 2008. Inmate Donald Vanderhost attests that during the basketball game on May 30, 2009, Addison became violent and hit the Plaintiff, causing Plaintiff to fall and hit his head on the concrete, rendering him unconscious and bleeding profusely. Vanderhost attests that there was no recreation staff or correctional staff supervising the game, so he had to run to find some staff for assistance, where he found the Defendant Holmes on the other side of the yard. Vanderhost further attests that he has witnessed Addison being disruptive and making threats on several occasions. Inmate Lance Pough has submitted an affidavit attesting that he and the Plaintiff were threatened by Addison on many occasions while officiating basketball league games in 2008. Pough further attests that Addison would become uncontrollable and violent during games and make threats, and that recreation staff were aware of Addison's conduct and behavior, yet failed to act or supervise the games. Finally, inmate Deshaun Rucker has submitted an affidavit wherein he attests to the same facts as Vanderhost. See, Attachments to Complaint.

In support of summary judgment in the case, the Defendants have submitted an affidavit from Daniel Mercado, who attests that he was the supervisor of recreation at FCI Williamsburg on May 30, 2009. Mercado attests that the recreation yard at FCI Williamsburg consists of four basketball courts, two softball fields, two running tracks, one soccer field, eight handball courts, one volleyball court, two horseshoe pits, and two bocce ball pits. Mercado further attests that there is also a patio area utilized by inmates for exercise purposes, which consists of five game tables, five televisions for inmate viewing, abdominal boards and hyper-extension stations, approximately twelve cardio exercise machines, as well as an inside recreational area. Mercado attests that recreation staff specialists supervise/oversee programs intermittently due to the number of areas and varied programs taking place, and that these specialists are required to conduct random

4



pat searches as they observe inmates entering and exiting the recreation area during the ten minute inmate moves. Mercado also attests that the recreation department has a form for inmates who want to be referees/umpires/officials, and that these positions are strictly voluntary and are used officially for recreation sponsored sporting events, and that inmates must successfully complete a fourteen hour training course on basic officiating to obtain one of these positions.

Mercado attests that Plaintiff volunteered to be a basketball referee and commissioner of the summer basketball league in April 2009. Mercado attests that he was not at work at the institution on May 30, 2009, but was notified the following day that Plaintiff had been assaulted by inmate Bobby Addison on the recreation yard. Mercado attests that Plaintiff was monitoring the inmate referees during an unofficial basketball game that was organized by the inmates on this particular day, and that the game Plaintiff was supervising was not a sporting event sponsored by the recreation department. Mercado attests that the recreation department sponsored summer basketball league was not scheduled to start until June 12, 2009. Mercado further attests that the Defendants Holmes and Brown were working in the recreation department on May 30, 2009, but were not required to be supervising any specific game being played by inmates because the sponsored summer basketball league had not yet begun. Rather, Holmes and Brown were required to walk around monitoring the entire recreation department, including the outdoor and indoor recreation areas as well as the patio area.

Mercado attests that since no specific recreational sponsored basketball game was being played on May 30, 2009, the Intramural Code of Conduct (the rules governing intramural games sponsored by the recreation department) did not apply to any games being played that day. Mercado attests that although the Intramural Code of Conduct provides for a staff member to be



present on the sidelines during all sponsored games, Holmes and Brown were not required to be present on the sidelines during the basketball game where Plaintiff was attacked by Addison, and they did not therefore violate any prison policy by not personally supervising this basketball game. See generally, Mercado Affidavit.

The Defendant Eugene Holmes has provided an affidavit wherein he attests that he was employed as a recreation specialist at the time of the incident at issue in this case. Holmes attests that he was working the evening shift in the recreation area, but was not supervising any specific game being played by inmates as he was walking around monitoring the entire recreation department, including the outdoor and indoor recreation areas as well as the patio area. Holmes attests that inmates who are playing basketball in the recreation yard were doing so at their own leisure and were not participating in a sporting event sponsored by the recreation department, as the sponsored summer basketball league had not yet begun. Holmes further attests that since no recreation sponsored basketball game was being played on May 30, 2009, the Intramural Code of Conduct did not apply to any games being played, and he was therefore not required to be present on the sidelines during the basketball game.

Holmes attests that between 5:45 and 5:50 p.m. on May 30, 2009 he was summoned to the outside basketball court by an inmate saying that there was a medical emergency. Holmes attests that he immediately ran over to the basketball court and observed the Plaintiff lying on the ground apparently unconscious and bleeding from the mouth and the back of his head. Holmes attests that he called a medical emergency on his radio alerting all on-duty staff that he needed medical help immediately, and then helped clear away inmates who were standing around the area so medical staff could get through. Holmes attests that he also began taking the names of the inmates



in the immediate area so that staff could determine what happened. Medical staff arrived and Plaintiff was taken out of the recreation area without further incident.

Holmes attests that after Plaintiff had left the recreation area, he and other staff continued identifying inmates who might have witnesses what happened, and that he also prepared a memorandum indicating when he had responded to the situation. Holmes attests that at the time of the assault he did not know that inmate Addison, who was later identified as the man who had attacked Plaintiff, posed a threat to the Plaintiff or to any other inmate on the recreation yard, nor was he aware that Addison had ever assaulted any inmate until he learned of it after he had assaulted the Plaintiff. Holmes further attests that he was not aware of Addison's alleged threatening behavior to other inmates while playing sports, and did not know if Addison had a prior history of any disciplinary infractions prior to this incident. Holmes attests that it is his understanding that Addison was transferred to another facility and that a "separation assignment" has been placed on both inmates to ensure they will never be housed in the same BOP facility again. See generally, Holmes Affidavit.

The Defendant Derrick Brown has submitted an affidavit wherein he attests that he was employed as a sports specialist on the date relevant to this Complaint, and was working the evening shift in the recreation area at FCI Williamsburg. Brown attests that he was not supervising any specific game being played by inmates in the recreation area on that particular day, as he was walking around monitoring the entire recreation department. Brown attests that since the sponsored summer basketball league had not begun, the inmates playing basketball in the recreation yard were not participating in a sporting event sponsored by the recreation department and were doing so at their own leisure; that the Intramural Code of Conduct therefore did not apply to any games being



played that day; and that no staff member was therefore required to be present on the sidelines during any basketball games played that day. Brown attests that sometime between 5:45 and 5:50 p.m. he was standing at the recreation gate preparing to release the fitness class when he heard the Defendant Holmes calling a medical emergency over the radio. Brown attests that he immediately secured the inside recreation area, the patio, and the recreation yard and then ran to the basketball court. Brown attests that he helped clear away inmates who were standing around the area so medical staff could get through, that he saw Plaintiff lying on the ground bleeding from his mouth and the back of his head, and that he began taking the names of inmates in the immediate area so that staff could determine what had happened.

Brown attests that after medical staff removed Plaintiff from the area, he continued identifying inmates who might have witnessed what had happened. Brown attests that he was not aware that Addison posed a threat to the Plaintiff or to any other inmate prior to this incident, nor was he aware that Addison had ever assaulted another inmate. Brown also attests that he was not aware of Addison's threatening behavior towards other inmates while playing sports, and did not know if Addison had a prior history of any disciplinary infractions prior to this incident. <u>See</u> <u>generally</u>, <u>Brown Affidavit</u>.

In addition to these affidavits, the Defendants have provided copies of Holmes' and Brown's memoranda of that day, together with copies of the Intramural Code of Conduct and related exhibits.[5] An affidavit has also been provided by Eric Rayburn, a Captain at FCI Williamsburg on

---

[5]While the Court has been provided with hard copies of these documents, which were also served on the Plaintiff, they have not been filed by the Defendants on the docket as part of their motion. Defendants are directed to do so in order for these documents to be available for review in the event of any appeal of the District Court's decision.



the dates relevant to this Complaint, who attests that the initial investigation following this incident indicated that Plaintiff had been assaulted by inmate Bobby Addison, who had become confrontational during a basketball game. Rayburn attests that Plaintiff was the Commissioner for the Summer Basketball League and was monitoring the inmate referees during an unofficial basketball game that had been organized by the inmates. Rayburn attests that inmate witnesses indicated that during the basketball game Addison was being confrontational to the referees and/or other inmates, that Plaintiff had advised the referee calling the game to have Addison sit down to cool off for a few minutes, and that thereafter and without any provocation, Addison punched Plaintiff in the face causing him to fall to the ground and lay unconscious. Rayburn attests that following the investigation, Addison was given an incident report charging him with assault, and that following a due process hearing Addison was convicted and disciplined for this charge. Rayburn attests that a threat assessment was also prepared by special investigative services regarding the incident, which recommended that Addison be transferred to a facility commensurate to his safety and security needs, while Plaintiff should be returned to the general population at FCI Williamsburg. Rayburn attests that the threat assessment did not indicate that Plaintiff and Addison had had any problems prior to that day, that there was also no information to indicate that Addison had attacked other inmates or received an incident report for assaulting another inmate prior to this incident, and that Addison did not have a prior history of any disciplinary infractions prior to this incident. Rayburn attests that Addison was transferred to another facility and a separation assignment has been placed on both inmates. See generally, Rayburn Affidavit.

        An affidavit has also been submitted by James Patterson, a Lieutenant with the Special Investigative Service (SIS), who attests that as part of his responsibilities and duties he oversees the



investigation involving inmate on inmate assaults. Patterson attests that all incidents that are investigated are maintained in the SIS office and generally filed according to the assailant's name, the victim's name, or the date of the alleged incident. Patterson attests that he has searched all SIS records pertaining to inmate Bobby Addison, and that the only SIS records pertaining to Addison relate to the incident of May 30, 2009, when Addison assaulted the Plaintiff. Patterson further attests that a threat assessment was completed by SIS staff after this incident, which did not indicate that Plaintiff and Addison had had any problems prior to that day, nor was there any information to indicate that Addison had attacked other inmates or received an incident report for assaulting another inmate prior to this incident. Patterson also attests that Addison did not have a prior history of any disciplinary infractions prior to this incident, and that if the BOP had had information that indicated that Addison was a threat to a particular inmate or group of inmates, the BOP would have taken action to make sure that Addison and the particular inmate or inmates were not in general population at the same institution at the same time. Patterson further attests that he has searched SENTRY, the BOP's official computerized data base, which reveals that Addison has had only one incident report while he has been in BOP custody, which is the incident at issue in this lawsuit. Patterson attests that with respect to a statement by inmate Carl McNeil in his affidavit, he has searched the SIS records and does not have any information of an investigation pertaining to inmate Carl McNeil being involved with any inmate with the last name Hutchinson or with respect to an assault on or about October 12, 2008 by Addison. See generally, Patterson Affidavit.

       Finally, the Defendant John Owen has submitted an affidavit wherein he attests that he is the Warden at FCI Williamsburg, that he is not familiar with the Plaintiff, who was an inmate at FCI Williamsburg from December 28, 2007 to January 29, 2010, and that he is not involved in the



day to day decisions concerning the details of each inmate's incarceration. Owen attests that he was notified on May 30, 2009 that Plaintiff had been assaulted, after the assault had occurred, and that a review of SENTRY indicates that he responded to an administrative remedy request filed by Plaintiff in regard to staff failing to protect him from the danger of other inmates. Owen attests that the investigation of Plaintiff's administrative request revealed no indication that staff were aware that Plaintiff was going to be assaulted by Addison. <u>See</u> <u>generally</u>, <u>Owen Affidavit</u>.

In opposition to the Defendants' motion, Plaintiff has resubmitted the Gregory Uzzell, Vanderhost, McNeil, Pough, and Rucker affidavits that were originally attached to his exhibits to his amended complaint. Plaintiff has also submitted a copy of a new email from Pough, wherein he again states that "prison officials were previously aware of the inmate Addison [sic] violent nature and conduct . . . . [and that] Addison . . . made numerous threats towards us prison official's referees during the inside games, prior to the incident . . . ." Pough then goes on to complain that he is being harassed by prison authorities. <u>See</u> Court Docket No. 102-5. Plaintiff has also submitted new affidavits from inmate Jerry Hill and inmate Joseph Jones. Jones attests that he participated in the basketball league while housed at FCI Williamsburg, and that Plaintiff was the "Commissioner" over basketball. Jones attests that before every basketball season begins there are referee classes and preseason games played, and that any questions about the basketball league/season were directed by staff to the Plaintiff. Jones attests that the recreation staff relied on Plaintiff, as Commissioner, to resolve all conflicts, and that staff were rarely supervising and/or monitoring games. Jones attests that on May 30, 2009 there were scheduled basketball games to be played against units for summer league basketball, and that these games were announced by staff and a flyer was posted in the units and in the recreation area. Jones further attests that in December 2009 (after the incident at issue in

11

this lawsuit), Plaintiff ended a game in which he [Jones] was participating because of threats made towards the officials. Jones attests that staff was not present to resolve the conflict, and that after Plaintiff stopped the game a fight erupted and two inmates were sent to segregation. Jones attests that staff did not see the fight but used the cameras to determine who was fighting. See generally, Jones Affidavit.

Plaintiff has also submitted copies of some of his grievance documents, some medical records, and some copies of basketball league materials. Plaintiff also submitted a new affidavit wherein he attests that, contrary to the Defendants' contentions that they did not know about Bobby Addison's history of threatening and assaultive behavior, on October 12, 2008 during a flag football game he witnessed Addison hit inmate Carl McNeil, and that recreation officers were aware of this incident as they attended to McNeil and sent him to get medical care. With respect to the recreational basketball season, Plaintiff attests that before every season begins there are preseason games played for the referee official class that is approved by recreation, and that staff relied on him to organize these games with their approval and support. Plaintiff attests that during the season Addison threatened him during a scheduled game, in front of the staff member overseeing the league, and that he told staff that Addison's threats and intimidation needed to be addressed before someone got hurt. However, Plaintiff attests that he was told by staff the following day that "Addison was only venting with frustration". Plaintiff further attests that he talked to "every staff (including Defendants Holmes and Brown)" about Addison's threatening and violent behavior and "rage against me and other officials", and that they needed to "do their job by either suspending Bobby Addison from participating in intramural sports or being present to supervise/monitor all games", but that the staff "disregarded the known threats . . . .".



Plaintiff further attests that in May 2009 he was the basketball clinic instructor and was required to hold a basketball clinic for the upcoming summer league season, that this class had sponsored and approved by recreation for their intramural program, and that everything that involves the basketball clinic is sponsored and supported by recreation. Plaintiff also attests that on May 30, 2009, between two and three p.m., he reminded the Defendants Holmes and Brown of the scheduled summer league game, asked them to have the game announced in the units, and that the game was in fact announced. Plaintiff attests that he then had to wait on Holmes and Brown to open their office to retrieve his recreation equipment, consisting of a score book, score clock, game jerseys and new whistles. Plaintiff attest that during the "scheduled approved game", Addison became disruptive and went into a "violent rage", after which he was given a technical foul and was asked to leave the game. Plaintiff attests that staff was not present to resolve the conflict so he stopped the game to try to calm Addison down, at which point Addison became unruly, threatening and insulting. Plaintiff attests that at that point he ended the game, and as he walked away to gather the equipment Addison struck him from behind. Plaintiff also discusses a game from December of 2009, which he ended because of threats from inmate participants towards the officials. Plaintiff attests that after that game ended, a fight erupted and there was no staff monitoring/supervising the scheduled game. Plaintiff also discusses some of his medical injuries. See generally, Plaintiff's Affidavit (Court Docket No. 102-3).

### Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the



pleadings is appropriate.  Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991).

Once the moving party makes this showing, however, the opposing party must respond to the motion

with specific facts showing there is a genuine issue for trial.  Baber v. Hosp. Corp. of Am., 977 F.2d

872, 874-75 (4th Cir. 1992).  Further, while the Federal Court is charged with liberally construing

a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see

Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal

construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts

which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material

fact where none exists.  Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

## I.

## Bivens Claim

Plaintiff's Bivens claim is asserted against  Defendants Owen, Holmes and Brown.[6]

Bivens established a direct cause of action under the Constitution of the United States against federal

officials for the violation of federal constitutional rights.  Bivens, 403 U.S. at 397.  A Bivens claim

is analogous to a claim brought against state officials under 42 U.S.C. § 1983; therefore, case law

involving § 1983 claims is applicable in Bivens actions, and vice versa.  See Farmer v. Brennen,

supra; Bolin v. Story, 225 F.3d 1234, 1241-1242 (11th Cir. 2000); Campbell v. Civil Air Patrol, 131

F.Supp 2d 1303, 1310, no date (M.D.Ala. 2001); see also, note 1, supra.  As federal employees, the

individual Defendants Owen, Holmes and Brown are subject to suit for damages in their individual

---

[6]The Defendant United States of America is not subject to suit under Plaintiff's Bivens claim. Moore v. U.S. Dept. of Agriculture on Behalf of Farmers Home Admin., 55 F.3d 991, 995 (5th Cir. 1995); FDIC v. Meyer, 510 U.S. at 484-486 (1994). Rather, the United States is subject to suit under Plaintiff's FTCA claim, while these three individual Defendants are not subject to suit under that claim.



capacities in a Bivens lawsuit. F.D.I.C. v. Meyer, 510 U.S. 471, 484 (1994)[Bivens claim can be brought against an individual federal employee in his individual capacity.]. However, even though subject to suit for damages in a Bivens action, after careful review of the arguments and evidence presented, the undersigned finds and concludes that these Defendants are entitled to summary judgment on Plaintiff's Bivens claims.

In order for any one of these three Defendants to be liable for a violation of Plaintiff's constitutional rights, Plaintiff must have submitted *evidence* sufficient to give rise to a genuine of fact as to whether any one of these Defendants was deliberately indifferent to a specific known risk of harm to the Plaintiff. See Pruitt v. Moore, No. 02-395, 2003 WL 23851094, at * 9 (D.S.C. Jul. 7, 2003)[Deliberate or callous indifference on the part of prison officials to a specific known risk of harm states an Eighth Amendment claim], cert. denied, 2004 WL 232748 (4th Cir. 2004); Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. Mar. 11, 1997)["A defendant acts with deliberate indifference . . . if he or she 'knows of and disregards' an excessive risk to inmate health or safety]. Pursuant to this standard, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exits, and he must also draw the inference". Farmer v. Brennan, 511 U.S. 825, 837 (1994). This "deliberate indifference" standard is a "very high standard - a showing of mere negligence will not meet it". Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999).

The Supreme Court has held that a plaintiff can make a prima facie case of deliberate indifference by showing "that a substantial risk of [serious harm] was long standing, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must



15

have known' about it".  <u>Farmer</u>, 511 U. S. at 842.  Here, the Defendants Holmes and Brown both attest that they had no personal knowledge that Addison had assaulted another inmate before he assaulted the Plaintiff, and that Plaintiff's inmate declarations in which these inmates conclusorily state that un-named prison officials "knew" Addison posed a risk does not constitute evidence sufficient to survive summary judgment, particularly in light of the fact that they are not named in these affidavits and there was nothing in Addison's prison disciplinary record which reflects any assault on an inmate prior to this incident.  <u>See</u> Court Docket No. 29-16 [Addison Prison Disciplinary Record].  The undersigned agrees.  A review of the McNeil, Vandershost, Pough, Rucker, Uzzell, Jones, and Hill affidavits provided by the Plaintiff confirms that none of these affidavits state that the Defendants Holmes or Brown had any prior knowledge of Addison's allegedly violent propensities, of any assaultive behavior by Addison, or of any specific known threat to the Plaintiff, before the incident at issue in this lawsuit.  While some of these affidavits do reference an incident which occurred during a flag football game in 2008, where Addison is alleged to have assaulted another inmate, neither of these two Defendants are mentioned as having been involved with that altercation (assuming for purposes of summary judgment that such an altercation did in fact occur), nor do any of the other exhibits submitted as evidence by the Plaintiff (except for Plaintiff's 2011 affidavit, discussed <u>infra</u>) show any knowledge by Holmes or Brown of Addison's allegedly violent character, or of any threat to the Plaintiff.[7]  Rather, it is apparent that the reason these two individuals

---

[7] The fact that some of the inmate affidavits indicate that some un-named "staff" were aware of Addison's violent nature is not sufficient to state a claim against Brown or Holmes, as such conclusory claims fail to show any specific knowledge or wrongdoing on the part of these Defendants.  <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9[th]Cir. 1999)["liability...must be based on the personal involvement of the defendant"], <u>cert. denied</u>, 522 U.S. 1154 (1999); <u>Horton v. Marovich</u>, 925 F.Supp. 540 (N.D.Ill. 1996)["Thus, a plaintiff suing a government official in his individual capacity and therefore seeking to hold the official personally liable must show that the official



have been named as Defendants is because they were the two correctional officers on duty in the recreation area at the time of the assault at issue.

Plaintiff himself did not reference either one of these two Defendants as having any specific knowledge concerning Addison in the affidavit he provided as an attachment to his Amended Complaint.[8] It was only *after* the Defendants had submitted their evidence in support of summary judgment that Plaintiff filed a new affidavit as part of his response to the Defendants' motion in which he states that "I talked to every staff (including Defendants Holmes and Brown) about my concerns of Addison threatening and violent rage against me and other officials."[9] This one time, general, and conclusory statement, without any specifics as to times or dates or what was said and without any written documentation or any other evidence to substantiate this allegation, is simply not sufficient by itself to constitute evidence that either Holmes or Brown knew of a specific danger to the Plaintiff from Addison prior to the incident at issue such as to subject them to liability for violation of a constitutional right. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; see also Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995)[Explaining that while the party opposing summary judgment is entitled to the benefit of

personally caused or played a role in causing the deprivation of a federal right"].

[8]As previously noted, the Complaint itself is not evidence. See Note 3, supra.

[9]The only other reference by Plaintiff in this affidavit to Brown and Holmes involves an incident that occurred in December 2009, nine months *after* the incident at issue in this lawsuit. See Plaintiff's Affidavit, at ¶ ¶ 19-20.



inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range of probability" and that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary"(internal quotation marks omitted)].[10]

Therefore, Holmes and Brown are entitled to dismissal as party Defendants under Plaintiff's <u>Bivens</u> claim. <u>House</u>, 824 F.Supp. 485 [Plaintiff's conclusory allegations insufficient to maintain claim]; <u>Farmer</u>, 511 U.S. at 837 [In order to be liable under the deliberate indifference standard, the evidence must show "the official [was] both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference"]; <u>cf. Parrish v. ex rel. Lee v. Cleveland</u>, 372 F.3d 294, 302-303 (4th Cir. 2004)[Situation must be evaluated as the officers reasonably perceived it, "not as it now may be perceived enlightened by the benefit of hindsight"]; <u>Grayson</u>, 195 F.3d at 695 ["deliberate indifference" standard is a "very high standard - a showing of mere negligence will not meet it"].

With respect to the Defendant Owen, there is no evidence whatsoever that Owen had any personal knowledge concerning Addison being a potential danger to the Plaintiff or anyone else.

---

[10]Further, even if the Court were to assume for purposes of summary judgment that Holmes and Brown did not follow BOP policies or procedures in this instance, as Plaintiff alleges, that does not amount to a constitutional violation. <u>Keeler v. Pea</u>, 782 F.Supp. 42, 44 (D.S.C. 1992) [violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983]); <u>see also</u> <u>Scott v. Hamidullah</u>, No. 05-3027, 2007 WL 904803 *5 n.6 (D.S.C. Mar. 21, 2007) (citing <u>Riccio v. County of Fairfax, Virginia</u>, 907 F.2d 1459, 1469 (4th Cir. 1990)); <u>Johnson v. S.C. Dep't of Corrections</u>, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that Defendants did not follow their own policies fails, as the failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation."] (citing <u>Riccio</u>, 907 F.2d at 1469 [if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]).



He states in his sworn affidavit that he had no such knowledge, and there is no evidence of any record maintained by the BOP which Owen may (in his capacity as Warden) have reviewed showing that Addison had any disciplinary infractions, or that Owen had been advised that Addison had made any threats toward the Plaintiff or anyone else, prior to the incident at issue. Plaintiff has presented no evidence to dispute Defendants' evidence showing that the BOP had no official record of any prior violent or assaultive behavior by inmate Addison before the incident at issue. Indeed, it is readily apparent from a plain reading of Plaintiff's Amended Complaint that Owen has been named as a party Defendant solely due to his status as Warden of the Institution. No specific allegations are made against him. However, the doctrine of vicarious liability and the doctrine of respondeat superior are not applicable in Bivens actions. Vinnedge v. Gibbs, 550 F.2d 926, 927-929 & nn. 1-2 (4th Cir. 1977). Therefore, as Plaintiff has presented no evidence of specific wrongdoing on the part of Owen, he may not be held liable for the acts of others. Monell v. Dep't of Social Servs., 436 U.S. 658, 690-691 (1978); Wetherington v. Phillips, 380 F.Supp. 426, 428-429 (E.D.N.C. 1974), aff'd, 526 F.2d 591 (4th Cir. 1975); cf. Joyner v. Abbott Laboratories, 674 F.Supp. 185, 191 (E.D.N.C. 1987); Stubby v. Hunter, 806 F.Supp. 81, 82-83 (D.S.C. 1992).

Finally, to the extent Plaintiff's Bivens claim is intended to encompass an assertion that one or more of the individual Defendants, and in particular the Defendant Owen, mishandled or improperly handled Plaintiff's grievances concerning this matter, this is not a claim cognizable under Bivens, as there is no constitutional right to access to a prison grievance procedure. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) [existence of a prison grievance procedure does not confer any substantive right upon inmates]; Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Brown v. Dodson, 863 F.Supp. 284 (W.D.Va. 1994)



[inmates do not have a constitutionally protected right to a grievance procedure]; <u>Azeez v. DeRobertis</u>, 568 F.Supp. 8, 10 (N.D.Ill. 1982) [even where a state elects to provide a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights]; <u>Burnside v. Moser</u>, 138 Fed.Appx. 414, 415-416 (3d Cir. June 30, 2005). Therefore, even assuming for purposes of summary judgment that there was some defect in the handling of Plaintiff's grievances, that would not give rise to a viable <u>Bivens</u> claim. <u>Spencer v. Moore</u>, 638 F.Supp. 315, 316 (E.D.Mo. 1986) [holding that an inmate grievance procedure is not constitutionally required].

Therefore, the Defendants Owen, Holmes and Brown are entitled to summary judgment on Plaintiff's <u>Bivens</u> claim.

## II.

### FTCA Claim

Plaintiff's remaining FTCA claim is asserted solely against the Defendant United States of America. The FTCA waives sovereign immunity and allows suits against the United States for personal injuries caused by government employees acting within the scope of their employment. Under this Act, a plaintiff may recover monetary awards from the United States for damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope...of employment." 28 U.S.C. § 1346(b).[11] Whether any government employee was negligent is to be determined "in accordance with the law of the place where the act or omission occurred," in this case the State of South Carolina. 28 U.S.C. § 1346(b).

---

[11]In order to obtain relief in Federal Court under the FTCA, a litigant must first have exhausted their administrative remedies. <u>See</u> 28 U.S.C. § 2675; <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993) ["The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."]. The United States does not contest administrative exhaustion of Plaintiff's FTCA claim. <u>See</u> <u>Defendants' Brief</u>, p. 8.



In order to prove negligence in South Carolina, Plaintiff must prove by a preponderance of the evidence that 1) the Defendant had a legal duty of care; 2) the Defendant failed to discharge that duty; and 3) the Defendant's breach proximately caused him injury. Ajaj v. United States, 479 F.Supp.2d 501, 549 (D.S.C. 2007); Goode v. St. Stephens United Methodist Church, 494 S.E.2d 827, 834 (S.C. 1997); Hubbard v. Taylor, 529 S.E.2d 549 (S.C.App. 2000). Plaintiff may show an affirmative legal duty of care to him arising from a statute if the plaintiff is a member of the class of persons the statute is intended to protect, and the essential purpose of the statute is to protect the plaintiff from the kind of harm he suffered. Rayfield v. South Carolina Dep't of Corrections, 374 S.E.2d 910, 914 (S.C.Ct.App. 1988). Here, an affirmative legal duty of care towards the Plaintiff does exist by virtue of 18 U.S.C. § 4042, which provides that the Bureau of Prisons "shall...provide suitable quarters and provide for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States." Therefore, the question before the court is whether there is sufficient evidence to give rise to a genuine issue of fact as to whether the Defendant failed to discharge that legal duty of care and thereby proximately caused Plaintiff's injury.

While the Defendant's legal duty of care can reach the level of a constitutional claim insofar as appropriate care for prisoners is mandated by the Eighth Amendment, for purposes of an FTCA claim this duty is only one of "reasonable care" as provided by § 4042. See Johnson v. U. S. Government, 258 F.Supp. 372, 376 (E.D.Va. 1966)[Under Section 4042, a prison official's duty requires only the exercise of ordinary diligence under the circumstance]; see also In re Agent Orange Product Liability Litigation, 635 F.2d 987, 996 (2d Cir. 1980) [dissenting] (citing Owens v. Haas, 601 F.2d 1242 (2d Cir. 1979), cert. denied, 444 U.S. 980 (1979)); Harley v. United States, No. 08-820, 2009 WL 187588 at * 4 (D.S.C. Jan. 26, 2009). Further, Plaintiff is required to show negligence

21



with reasonable certainty, not through mere conjecture, and he may not attempt to prove negligence through the doctrine of <u>res</u> <u>ipsa</u> <u>loquitur</u>. <u>Ajaj</u>, 479 F.Supp.2d at 549; <u>Eickhof v. Beard-Laney</u>, 20 S.E. 2d 153, 154-155 (S.C. 1942); <u>Crider v. Infinger Transportation Co.</u>, 148 S.E.2d 732, 735 (S.C.1966). However, when considering the Defendant's arguments for summary judgment, the Court is constrained to note that, while the Defendant discusses at some length whether the evidence is sufficient to give rise to a genuine issue of fact as to whether the standard for a constitutional violation has been meet, Defendant makes no argument with respect to whether a negligence standard has been met by this evidence. As such, the Court is left to evaluate this issue on its on: i.e., whether the Defendant exercised "reasonable care" and "ordinary diligence" under the facts and circumstances presented.

After careful review and consideration of the evidence submitted pursuant to this standard, and in the absence of any specific arguments from the Defendants, the undersigned finds and concludes that the Defendants are not entitled to summary judgment on Plaintiff's federal tort claim. The evidence before the Court reflects that the Defendant recognized the importance of having staff present during official basketball league games. <u>See</u> <u>Mercado Affidavit</u>, ¶ 7; <u>Holmes Affidavit</u>, ¶ 3; <u>Brown Affidavit</u>, ¶ 3. However, Defendant's evidence does not indicate whether this staff presence was for security purposes, or simply to provide for officiating duties, as it is unclear what one staff member could be expected to do in the event of a conflict such as occurred here, other than to call for backup. <u>See</u> <u>also</u> <u>Defendants' Exhibit No. 10</u>, ¶ 9. The evidence clearly shows that the assault in this case was an unprovoked and sudden act; therefore, the fact that the assault took place is not in and of itself evidence of negligence, as there is no evidence before the Court to show that the presence of a staff member would or could have prevented the assault from happening. The



with reasonable certainty, not through mere conjecture, and he may not attempt to prove negligence through the doctrine of <u>res</u> <u>ipsa</u> <u>loquitur</u>. <u>Ajaj</u>, 479 F.Supp.2d at 549; <u>Eickhof v. Beard-Laney</u>, 20 S.E. 2d 153, 154-155 (S.C. 1942); <u>Crider v. Infinger Transportation Co.</u>, 148 S.E.2d 732, 735 (S.C.1966). However, when considering the Defendant's arguments for summary judgment, the Court is constrained to note that, while the Defendant discusses at some length whether the evidence is sufficient to give rise to a genuine issue of fact as to whether the standard for a constitutional violation has been meet, Defendant makes no argument with respect to whether a negligence standard has been met by this evidence. As such, the Court is left to evaluate this issue on its on: i.e., whether the Defendant exercised "reasonable care" and "ordinary diligence" under the facts and circumstances presented.

After careful review and consideration of the evidence submitted pursuant to this standard, and in the absence of any specific arguments from the Defendants, the undersigned finds and concludes that the Defendants are not entitled to summary judgment on Plaintiff's federal tort claim. The evidence before the Court reflects that the Defendant recognized the importance of having staff present during official basketball league games. <u>See</u> <u>Mercado Affidavit</u>, ¶ 7; <u>Holmes Affidavit</u>, ¶ 3; <u>Brown Affidavit</u>, ¶ 3. However, Defendant's evidence does not indicate whether this staff presence was for security purposes, or simply to provide for officiating duties, as it is unclear what one staff member could be expected to do in the event of a conflict such as occurred here, other than to call for backup. <u>See</u> <u>also</u> <u>Defendants' Exhibit No. 10</u>, ¶ 9. The evidence clearly shows that the assault in this case was an unprovoked and sudden act; therefore, the fact that the assault took place is not in and of itself evidence of negligence, as there is no evidence before the Court to show that the presence of a staff member would or could have prevented the assault from happening. The



question is, instead, whether there is sufficient evidence to give rise to a genuine issue of fact as to whether Addison should have even been allowed to be playing basketball, and whether it was negligent for the Defendant to allow him to do so.

   With respect to this issue, considered in the light most favorable to the Plaintiff, the evidence shows that Addison had a prior history of violent behavior during inmate sporting events, including previously having broken inmate McNeil's jaw, and that although complaints and/or concerns had been made to prison officials concerning Addison's behavior (although, as previously discussed, there is not sufficient evidence that Defendants Brown or Holmes individually knew of this conduct to establish the higher standard for a <u>Bivens</u> claim), Addison was not disciplined or removed from the prison, nor was he banned from playing intramural sports.  <u>Rayburn Affidavit</u>, ¶ ¶ 4-8.

   While the Defendant denies that Addison had any prior history of any violent and/or assaultive behavior, inmate Gregory Uzzell attests that he was officiating the flag football game in 2008 when Addison physically assaulted another inmate and left him unconscious and with a broken jaw.  Uzzell attests that despite this assault, the prison administration let Addison back out on the compound only "a few days later".  <u>Uzzell Affidavit</u>.  Inmate Carl McNeil has submitted an affidavit wherein he attests that he was the inmate assaulted by Addison in 2008, during which he was knocked unconscious.  McNeil attests that following this assault, he was taken to the hospital for a fractured upper and lower jaw, and that a plate was inserted into his jaw.  McNeil attests that Addison was placed in the special housing unit, but was subsequently released by prison officials with Addison thereafter being allowed to continue to play the rest of the 2008 flag football season as well as other recreational sports.  <u>McNeil Affidavit</u>.  Inmate Lance Pough attests that he was threatened

23



by Addison on many occasions while officiating the winter indoor basketball league games in 2008, and that recreation staff at the prison were aware of Addison's conduct. Pough Affidavit. Plaintiff also attests in his affidavit that he had been threatened by Addison, and that he had told staff that Addison's threats and intimidation needed to be addressed before someone got hurt. Plaintiff attests that prison staff disregarded his complaints, with one staff member telling him that he believed that "Addison was only venting with frustration." Plaintiff's Affidavit.

This evidence is sufficient to give rise to a genuine issue of fact as to whether prison officials exercised "reasonable care" under the circumstances, whether the prison properly maintained records of Addison's conduct, and whether the prison was negligent in allowing Addison to continue to participate in sports and/or allow him to do so without adequate security being present. Johnson, 258 F.Supp. 372 [Duty of care requires exercise of ordinary diligence under the circumstances]; Ajaj, 479 F.Supp.2d at 549 [Negligence in South Carolina means a failure to discharge a legal duty of care that results in injury]. Although the Defendant disputes Plaintiff's version of events, the Court cannot choose to believe the averments of fact contained in the Defendants' affidavits and disregard those of the Plaintiff. At summary judgment, this Court cannot make credibility determinations to resolve issues of fact; Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991); Davis v. Zahradenick, 600 F.2d 458, 460 (4th Cir. 1979); and where a conflict from a set of given facts exists, this Court is required to consider the facts presented, and all inferences to be drawn from the facts, in the light most favorable to the non-moving party. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980); see Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), overruled on other grounds, 490 U.S. 228 (1989). Therefore, in considering whether summary judgment in this case is appropriate, the undersigned must assume that the Plaintiff's version of the



facts is true.

Considered pursuant to this standard, Plaintiff's affidavits and evidence in toto are sufficient to give rise to a genuine issue of fact as to whether prison officials were negligent in allowing Addison to participate in inmate sporting activities and/or do so without adequate security, resulting in Plaintiff's injuries. Therefore, the Defendant United States is not entitled to summary judgment on Plaintiff's federal tort claim.

### Conclusion

Based on the foregoing, it is recommended that the Defendants be **granted** summary judgment on Plaintiff's Bivens claim, and that the Defendants Owen, Holmes and Brown be **dismissed** as party Defendants in this case. With respect to the remaining Defendant United States of America, it is recommended that this Defendant's motion for summary judgment with respect to Plaintiff's federal tort claim be **denied** for the reasons stated.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

February 16, 2012
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

