IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Frederick Irvin, #16620-039, ) | Civil Action No.: 9:10-01336-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| John Owens, Warden FCI Williamsburg; ) | |
| NFN Holmes, Correctional Recreation ) | |
| Officer; United States of America; and ) | |
| NFN Brown, Correctional Recreation ) | |
| Officer, ) | |
| Defendants. | |

Plaintiff, an inmate with the Federal Bureau of Prisons proceeding *pro se*, alleges violations of his federal constitutional rights pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), as well as a separate claim under the Federal Tort Claims Act ("FTCA"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this matter was referred to United States Magistrate Judge Bristow Marchant for all pretrial proceedings. Defendants filed a motion for summary judgment. (Dkt. No. 96). Plaintiff filed a response in opposition. (Dkt. No. 102). The Magistrate Judge thereafter filed a Report and Recommendation, recommending that the Court grant summary judgment as to Plaintiff's federal constitutional claims and deny summary judgment as to Plaintiff's FTCA claim, finding that material factual disputes existed. (Dkt. No. 104). Plaintiff and Defendants filed objections and replies to the R & R. (Dkt. Nos. 107, 109, 110, 112).

In the Government's objection to the R & R, the Government argued that the discretionary function exception applies to the Plaintiff's FTCA claim. (Dkt. No. 107). As this

1

issue goes to the subject matter jurisdiction of the Plaintiff's FTCA claim, the Government may raise this argument at any point in the pleadings. *See, e.g., Patel v. U.S.*, 2009 WL 636532 at *1 n.3 (N.D. Texas 2009). On April 9, 2012, the Court issued an Order stating that the Plaintiff would have until April 20, 2012 to file a supplemental response addressing the discretionary function exception. (Dkt. No. 111). The Plaintiff did not file a response addressing this issue.

After a careful review of the record, all of the parties' briefs and the applicable legal standards, as set forth further below, the Court grants Defendants' motion for summary judgment as to Plaintiff's federal constitutional claims and grants in part and denies in part Defendants' motion for summary judgment as to Plaintiff's FTCA claim.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.*

In a motion for summary judgment, the movant is entitled to relief only if he or she can show "that there is no genuine dispute as to any material fact" and the moving party is thus "entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). A fact is deemed "material" if proof of its existence or non-existence would affect the disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of "material fact" is

"genuine" if the evidence offered is of the type from which a reasonable jury might return a verdict for the non-moving party. *Id.* at 257. The evidence must be viewed in a light most favorable to the non-moving party, and all inferences and ambiguities are read in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Plaintiff's *Bivens* claim is asserted against Defendants Owens, Holmes and Brown.[1] To hold a prison official liable under the Eighth Amendment, the prison official must know of and disregard an excessive risk to inmate health or safety – "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Actual knowledge or awareness on the part of the alleged inflicter thus becomes essential to proof of deliberate indifference because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment." *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995). A plaintiff may rely on circumstantial evidence that a prison official knew about the risk to inmate health or safety but the evidence must show that the risk "was so longstanding and pervasive that the official must have been aware of this danger." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

The FTCA provides for a limited waiver of the Government's sovereign immunity from suit by allowing a plaintiff to recover damages in a civil action caused by the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission

---

[1] The Magistrate Judge noted that a *Bivens* claim cannot lie against the United States or the individual Defendants in their official capacities. *See Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002).

3

occurred." 28 U.S.C. § 1346(b)(1). This waiver of immunity, however, is subject to exceptions, including the "discretionary function exception." *See McMellon v. United States*, 387 F.3d 329, 335 (4th Cir. 2004)(*en banc*)(describing § 2680(a)'s exception as "the most important"). The discretionary function exception preserves sovereign immunity even if the Government was negligent, *see Blakey v. U.S.S. Iowa*, 991 F.2d 148, 152 (4th Cir. 1993), and even if the government employee abused his or her discretion. 28 U.S.C. § 2680(a). Further, if the discretionary function exception applies, then the claim is outside the limited waiver of immunity created by the FTCA, and this Court is without subject matter jurisdiction to adjudicate it. *See Medina v. United States*, 259 F.3d 220, 223-24 (4th Cir. 2001).

The Supreme Court has articulated a two-part test in determining whether the discretionary function exception applies. *See United States v. Gaubert*, 499 U.S. 315, 322 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). First, "the exception covers only acts that are discretionary in nature, acts that 'involv[e] an element of judgment of choice.'" *Gaubert*, 499 U.S. at 322; *Berkovitz*, 486 U.S. at 536. If the action is not a matter of choice by the government employee, the discretionary function exception does not apply. *Berkovitz*, 486 U.S. at 536. The exception is not applicable "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.* Then, if the conduct does involve discretionary judgment, the court must decide "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23.

**Discussion**

Plaintiff alleges that on May 30, 2009, while officiating a prison summer league basketball game, he was attacked and assaulted by another inmate, Bobby Addison, and suffered serious injuries to his face and head. (Dkt. No. 37 at 2, 12). Plaintiff alleges that Addison was

known to the prison staff to be violent and previously hit inmate Carl McNeil's jaw and threatened prison officials. (Dkt. No. 102-3 at 1-3). Plaintiff asserts that as league commissioner of the summer basketball league, he had personally suspended Addison several times for his violent rage and that Addison thereafter threatened him. (Dkt. No. 37 at 12). Plaintiff produced affidavits from other inmates corroborating his allegations about Addison's temperament and the previous incident involving McNeil. (Dkt. No. 37 at 15-18, 23-24).

Defendants allege that Addison had no prior history of disciplinary infractions before this incident and that following the incident he was transferred to another facility and a separation assignment was put on both inmates to ensure that they will never be housed in the same BOP facility. (Dkt. No. 29-16 at 3). Defendants filed an affidavit from James Patterson, who asserts that there was no record of any incidents in prison records involving Addison other than the May 30, 2009 incident nor was there any information that Plaintiff and Addison had problems prior to the incident. (Dkt. No. 96-1 at 2).

Plaintiff alleges that there were no prison officials present at the basketball game, which was required in accordance with the FCI Williamsburg Intramural Code of Conduct ("Code of Conduct"). The Code of Conduct requires that "[a] staff member is present on the sideline during all games." (Dkt. No. 29-10 at 2). Plaintiff presented affidavits of other prisoners corroborating his assertion that it was a league recreational game and that no staff was supervising the game. (Dkt. No. 37 at 16-18, 23, 25). Plaintiff submitted a document entitled "Unit League Basketball General Information" which states that pre-season will begin Saturday,

May 30 and Sunday, May 31 at 5:30 PM and regular season will begin Friday June 12, 2010. (Dkt. No. 35 at 22).[2]

Defendants do not dispute that the basketball game was not being monitored but allege that because the game was unofficial and not sponsored by the Recreation Department, there was no requirement that a prison official be present. Defendants presented an affidavit from the Recreation Department Supervisor that the Recreation Department sponsored basketball league was not scheduled to start until June 12, 2009 and a flyer advertising the start of the unit basketball league as June 12, 2009. (Dkt. No. 29-6 at 3; Dkt. No. 29-9 at 1). Because it was not a sponsored game, the Supervisor attests that Defendants Holmes and Brown were required to walk around and monitor the entire Recreation Department but not supervise any specific game.

Defendant Holmes attests that he was summoned to the basketball court on May 30, 2009 by an inmate and saw Plaintiff on the ground apparently unconscious, bleeding from the mouth and the back of the head. (Dkt. No. 29-7 at 2). Holmes alleges that he promptly called a medical emergency, medical staff arrived to assist and that Plaintiff was taken out of the recreation area without further incident. *Id.* Holmes further alleges that he had no knowledge of Addison's alleged threatening behavior to other inmates while playing sports. *Id.* at 3. Defendant Brown was summoned to the basketball court by Holmes, assisted in responding to the incident and also alleges that he had no knowledge of Addison's alleged threatening behavior. (Dkt. No. 29-8).

After Defendants filed their motion for summary judgment, Plaintiff filed an affidavit with his response stating that "[s]taff disregarded the known threats and contrary to defendants declaration, I talked to every staff (including defendants Holmes and Brown) about my concerns

---

[2] Defendant alleges that this document is not relevant because it references the 2010 and not the 2009 season. The Court highlights this document because it raises the inference that the game in question may have been a pre-season game and thus arguably covered under the Code of Conduct.

6

of Addison [sic] threatening and violent rage against me and other officials." (Dkt. No. 102-3 at 2). In his new affidavit, Plaintiff also stated that there were "preseason games played for the referee official class" that were approved by recreation every season and that the "[s]taff relied on [him] to organize these games with their approval and support." *Id.* at 2. Plaintiff alleges that in May 2009, he was the basketball clinic instructor and "required to hold a[] basketball clinic for the upcoming summer league season" that was "sponsored and approved by recreation for their Intramural program." *Id.* Plaintiff further alleges that on May 30, 2009, he reminded Defendants Holmes and Brown of the "scheduled summer league game" and that upon Plaintiff's request, the game was announced in the units before the recreation period. *Id.* Finally, Plaintiff alleges that any organized game that involves using recreation equipment has to be approved by the recreation staff and that Defendants Holmes and Brown provided such equipment from their office for the game in question. *Id.* Plaintiff also filed several additional affidavits from inmates, including one from Lance Pough stating that prison officials were aware of Addison's "violent nature and conduct yet and still failed to supervise or monitor the basketball games or restrict his participation." (Dkt. No. 102-5 at 7).

**Eighth Amendment Claim**

Plaintiff argues that his Eighth Amendment rights were violated because the conditions of overcrowding at the prison created a substantial risk of serious harm[3] and that Defendants Holmes and Brown acted with deliberate indifference to his safety, as they were "aware of Addison [sic] violent rages as he has assaulted an inmate before." (Dkt. No. 37 at 5). The Court finds that the evidence in the record is not sufficient to create a genuine issue of material fact that

---

[3] As Plaintiff has not exhausted his claims regarding prison overcrowding, those claims are not properly before the Court at this time. *Jones v. Bock*, 549 U.S. 199, 211 (2007); Dkt. No. 29-3 at 2.

7

Defendants Holmes and Brown knew of any risk posed to Plaintiff specifically by Addison. As discussed by the Magistrate Judge, Plaintiff's new affidavit submitted after Defendant's motion for summary judgment was filed states that he had spoken to "every staff (including defendants Holmes and Brown)" about Addison being a threat – but this general statement is not specific enough to rise to the level of a constitutional violation. (Dkt. No. 102-3 at 2).

Plaintiff argues in his objections that the Court should deny summary judgment on the basis of his new affidavit which mentions Holmes and Brown, and Lance Pough's affidavit, which alleges general knowledge on the part of recreation staff. (Dkt. No. 109 at 2). However, as the Magistrate Judge noted, "[d]eliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Moreover, the Court finds that the Magistrate Judge properly recommended granting summary judgment as to Defendant Owen, as there is no evidence in the record that he had personal knowledge of Addison being a potential danger at all nor can he be liable for the acts of others based on the doctrine of vicarious liability or respondeat superior. (*See* Dkt. No. 29-18; Dkt. No. 104 at 19-20). The Court therefore adopts the portion of the R & R addressing Plaintiff's Eighth Amendment claims and grants Defendants' motion for summary judgment as to those claims.

**FTCA Claims**

Plaintiff alleges tort claims based on theories of intentional infliction of emotional distress and negligence as a result of the assault.[4] As the incident occurred in South Carolina, the Court applies South Carolina tort law. For the reasons discussed herein, the Court grants in part and denies in part Defendants' motion for summary judgment as to the FTCA claims.

---

[4] As the Magistrate Judge discussed, Plaintiff's FTCA claims cannot lie against the individual Defendants, but only against the United States.

8

Plaintiff alleges that the Defendants were negligent in allowing Addison to participate in recreational sports knowing that he was violent. Plaintiff alleges that 18 U.S.C. § 4042 creates a legal duty to Plaintiff on the part of the prison system, which provides that the Bureau of Prisons ("BOP") shall "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States. . ." and "provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2), (3).

The Government argues that the discretionary function exception protects decisions about whether Addison was properly placed in the general population and allowed to participate in recreational activities. (Dkt. No. 107). The Government further argues that the applicable statutory provisions, 18 U.S.C. § 4042, 18 U.S.C. § 3621[5] and 18 U.S.C. § 4081[6], grant the BOP discretion in determining classification and levels of custody and clearly involve judgment or choice. Moreover, the Government asserts that this judgment calls for policy considerations in that inmate housing and classification require weighing "health, safety, and security standards" against the "physical and fiscal restraints" of prison operation. (Dkt. No. 107 at 9).

A number of courts examining these statutory provisions have found them to be discretionary. The Eleventh Circuit reasoned that they "do not mandate a specific, non-discretionary course of conduct for the BOP to follow in classifying prisoners. . ." but rather "they give the BOP ample room for judgment by listing a non-exhaustive set of factors for the

---

[5] 18 U.S.C. § 3621(b) provides that the BOP "shall designate the place of the prisoner's imprisonment" and outlines the relevant factors to be considered in doing so.
[6] 18 U.S.C. § 4081 provides that "[t]he Federal penal and correctional institutions shall be so planned and limited in size as to facilitate the development of an integrated system which will assure the proper classification and segregation of Federal prisoners according to the nature of the offenses committed, the character and mental condition of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of the persons committed to such institutions." 18 U.S.C. § 4081.

BOP to consider and leaving to the BOP what weight to assign to any particular factor." *Cohen v. U.S.*, 151 F.3d 1338, 1343 (11th Cir. 1998). Moreover, when considering the second prong of the analysis, the court reasoned "[d]eciding how to classify prisoners and choosing the institution in which to place them are part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security within our nation's prisons." *Id.* at 1344; *see also, Dykstra v. U.S. Bureau of Prisons*, 140 F.3d 791 (8th Cir. 1998); *Carter v. U.S.*, 2002 WL 32332081 at *5 (D.S.C. 2002).

The Court finds that these statutory provisions leave discretion to the BOP officials as to classification decisions and are not mandatory. Further, as to the second prong of the discretionary function analysis, "it is clear that balancing the need to provide inmate security with the rights of the inmates to circulate and socialize within the prison involves considerations based upon public policy." *Calderon v. U.S.*, 123 F.3d 947, 951 (7th Cir. 1997). Therefore, the Court grants Defendants' motion for summary judgment as to Plaintiff's claim that allowing Addison to participate in recreation was negligent.

Plaintiff next alleges that the prison officials were negligent in failing to monitor a scheduled summer league basketball game pursuant to prison policy. For the discretionary function exception to apply, "the challenged act must involve an element of judgment" and "the Government needs to establish there was 'room for choice' in making the allegedly negligent decision." *Ashford v. U.S.*, 511 F.3d 501, 505 (5th Cir. 2007)(Court reversed district court's grant of summary judgment in favor of Government, finding there was a factual dispute as to whether a prison policy was triggered that required an inmate be placed in solitary confinement); *Parrott v. U.S.*, 536 F.3d 629, 638 (7th Cir. 2008)("As long as a valid separation order is in effect, there is no discretion left to operate on that narrow question."). The Court finds the

reasoning of the Fifth Circuit in *Garza v. U.S.*, 161 Fed.Appx. 341 (5th Cir. 2005), which involved similar facts, persuasive. In *Garza*, the court found that a post order instruction to patrol the prison recreation yard "prescribes a set course of action for the post guard on duty to follow to maintain order and safety during her shift" and that the instruction was "straightforward and unambiguous." *Id.* at 344. The court found that the Plaintiff's allegations that the prison guard did not patrol the yard and disperse congregated inmates during the open recreation period violated a "specific directive" and therefore was not protected by the discretionary function exception. *Id.* at 343-44.

In the case sub judice, Plaintiff alleges that the Code of Conduct requires a staff member to be present at all league games. (Dkt. No. 29-10 at 2). Defendant does not dispute this policy, but argues that the game in question was not an official league game as the official season had not started yet and Defendants Holmes and Brown were required to walk around the recreation area but not supervise the game. The Court finds that the policy requiring a staff member to be on the sidelines during intermural sports is mandatory. *See Brembry v. U.S.*, 2011 WL 121741 at *3-7 (W.D. Va. 2011)("While the discretionary function exception may very well apply to the prison administrators who formulated and adopted the post orders, it cannot apply to the conduct of [the prison guard] . . ."). Plaintiff's filings create an inference that the game in question may have been a pre-season game or a training game in preparation for the season that was approved by the recreation staff and therefore covered by the Code of Conduct.

In addition to there being a factual issue as to whether this was an "official" game, there is also a question of fact as to whether the Code of Conduct was limited only to official games as the policy states that the primary purpose is for the entire "intramural sports program." (Dkt. No. 29-10 at 1). Viewing the claim in a light most favorable to the Plaintiff, the Code of Conduct

11

may have broader applicability. The Court finds that the Code of Conduct is a mandatory policy and there is a genuine issue of material fact as to whether Defendants' Brown and Holmes complied with the policy. The Court therefore finds that the discretionary function exception does not apply to this aspect of the Plaintiff's FTCA claim.

To prove negligence in South Carolina, Plaintiff must show "1) the Defendant had a legal duty of care; 2) the Defendant failed to discharge that duty; and 3) the Defendant's breach proximately caused him injury." *Ajaj v. U.S.* 479 F.Supp. 501, 549 (D.S.C. 2007). Plaintiff has demonstrated that the Defendant United States had a duty created by the Code of Conduct to have a staff member oversee basketball games played during the recreation period and that there is a question of fact as to whether this duty was breached and that breach proximately caused Plaintiff's injuries. The Defendants' motion for summary judgment is therefore denied as to Plaintiff's FTCA negligence claim as to the duty of the recreation officers to supervise the basketball game pursuant to the Code of Conduct.

Under South Carolina law, in order to proceed on an intentional infliction of emotional distress theory, Plaintiff must establish that the Defendants "intentionally or recklessly inflicted severe emotional distress, or [were] certain, or substantially certain, that such distress would result from [their] conduct." *Hansson v. Scalise Builders of South Carolina*, 374 S.C. 352, 356 (S.C. 2007). Moreover, Plaintiff must establish that Defendants' conduct was "extreme and outrageous." *Id.* The Court finds that Defendants' actions in not complying with the Code of Conduct were not extreme and outrageous and do not meet the requisite level of intent for Plaintiff to proceed on this claim. *See Hernandez-Martinez v. Pyatt*, 2008 WL 220630 at *5-6 (D.S.C. 2008). Defendants' motion for summary judgment on Plaintiff's FTCA claim is granted as to Plaintiff's intentional infliction of emotional distress claim.

## Conclusion

Based upon the foregoing, Defendants' motion for summary judgment is **GRANTED** as to Plaintiff's federal constitutional claims and the Court **ADOPTS** that portion of the Magistrate Judge's R & R. (Dkt. No. 96). The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for summary judgment as to Plaintiff's FTCA claims. Plaintiff's FTCA claims are **DISMISSED** as to Defendants' Owens, Holmes and Brown. Defendants' motion for summary judgment is **DENIED** as to Defendant United States as to Plaintiff's FTCA claim regarding the negligence of the United States in enforcing its Intramural Code of Conduct policy and **GRANTED** as to Defendant United States as to Plaintiff's remaining negligence and intentional infliction of emotional distress claims.

AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Judge

Charleston, South Carolina
April 30, 2012